UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

|  |  |  |
|---|---|---|
| MARCY L. KOEZE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:06-cv-532 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. Plaintiff filed her applications on October 20, 2004 (A.R. 50-52), claiming an onset of disability of June 1, 2003. Plaintiff's claims were denied on initial review. (A.R. 24-30). On October 12, 2005, plaintiff received a hearing before an administrative law judge. (A.R. 207-236). On January 4, 2006, the ALJ issued his decision denying plaintiff's applications for benefits. (A.R. 17-23). On June 6, 2006, the Appeals Council denied review (A.R. 5-7), and the ALJ's decision became the Commissioner's final decision.

On August 1, 2006, plaintiff filed her complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Plaintiff's brief presents the following statement of errors:

      I.      The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physician.

      II.     The ALJ committed reversible error by finding that plaintiff had the ability to return to her past relevant work.

(Plf. Brief at 10, docket # 8). Upon review, I recommend that the Commissioner's decision be affirmed.

### Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001); *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston*, 245 F.3d at 534 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Walters v. Commissioner*, 127 F.3d at 528; *Hogg v. Sullivan*, 987 F.2d 328, 331 (6th Cir. 1993). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court

interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004).

## Discussion

The ALJ found that plaintiff met the disability insured requirements of the Social Security Act on June 1, 2003, her asserted onset of disability, and continued to meet them through the date of the ALJ's decision. The ALJ found that plaintiff had continued to perform work after her alleged onset of disability, but her work did not rise to the level of substantial gainful activity that would have precluded an award of benefits at Step 1 of the sequential analysis.[1] The ALJ found that plaintiff had the severe impairment of an affective disorder. Plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments.

---

[1] Plaintiff testified at the October 12, 2005 hearing that she was working part-time as a personal care attendant. (A.R. 214). During the period plaintiff claims to have been disabled, she also worked at an "antique place," but she "really did not consider it a job because [she] did not make any money." (A.R. 216). Plaintiff testified that she also tried selling things on the Internet, but ended up losing money. (A.R. 216-17).

The ALJ found that plaintiff's subjective complaints were not fully credible. The ALJ found that plaintiff retained the following residual functional capacity (RFC):

> The claimant has the residual functional capacity to perform the exertional requirements of work. The claimant is markedly limited in the ability to carry out detailed instructions and interact with the general public. She is moderately limited in the ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. As a result, the claimant is limited to simple, unskilled tasks.

(A.R. 23). The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis because plaintiff was capable of performing her past relevant work as a personal care attendant.

**1.**

Plaintiff's initial argument is that the ALJ committed "reversible error" by "not properly considering" the opinion of plaintiff's treating physician, Philip C. Haines, M.D. (Plf. Brief at 10, docket # 8). Plaintiff argues that the ALJ "essentially adopted the Residual Functional Capacity Assessment of a non-examining physician,"[2] "harped upon the fact that Plaintiff was doing well at times," and failed to give sufficient deference to Dr. Haines's May 31, 2003 statement that plaintiff's ability to work had been "severely compromised due to an impairment in operational judgment, and the ability to focus and carry through consistently on tasks." (Plf. Brief at 11). Plaintiff also argues that as a procedural matter, the ALJ failed to provide "good reasons" for rejecting Dr. Haines's opinion. (Plf. Brief at 11-12). Upon review, I find that plaintiff's arguments

---

[2]This is a reference to the March 28, 2005 mental residual functional capacity assessment by Psychologist William Schirado (A.R. 180-84) finding that the only areas in which plaintiff was "markedly limited" were in her ability to carry out detailed instructions and the ability to interact appropriately with the general public.

fail to provide a basis for disturbing the Commissioner's decision denying plaintiff's claims for DIB and SSI benefits.

Plaintiff presented exceedingly little evidence in support of her disability claims. The ALJ accurately described the medical evidence as "meager." (A.R. 19). Plaintiff claimed an onset of disability of June 1, 2003, alleging that she was disabled on the basis of post-traumatic stress disorder, mental health problems, anxiety attacks, depression, and attention deficit disorder.'"[3] (A.R. 18). Plaintiff submitted records of psychological evaluations conducted in 1968 when plaintiff was only 17 years old. (A.R. 125-32). This is followed by a thirty-five-year gap in plaintiff's medical records. The ALJ questioned plaintiff concerning this remarkable gap in her records (A.R. 218-19), and plaintiff's representative stated that she had explained to plaintiff "the big problem of the gap of evaluation." (A.R. 220). Plaintiff's October 10, 2005 prehearing statement reported that plaintiff had first seen Dr. Haines on April 1, 2003. (A.R. 123-24). When questioned by the ALJ as to what had prompted her to see Dr. Haines in April 2003, plaintiff responded that she had initially taken her daughter to Dr. Haines to obtain medication for the daughter's ADD. Plaintiff then told Dr. Haines that she was "sure that [she] had ADD too," and Dr. Haines began providing plaintiff with prescription medication. (A.R. 221).

It is well established that the medical opinions and diagnosis of treating physicians are not entitled to great weight where they are conclusory, but are entitled to such weight where

---

[3] Plaintiff filed multiple applications for social security benefits predating the applications giving rise to this lawsuit. (A.R. 17, 53-55, 185-90). For example, in September of 2003, an application for DIB benefits claiming an August 31, 2002 onset of disability was denied at Step 1 of the sequential analysis because plaintiff was engaging in substantial gainful activity. (A.R. 53). The administrative denials of plaintiff's earlier applications for benefits are not before this court for judicial review. *See Califano v. Saunders*, 430 U.S. 99, 107-08 (1977).

supported by detailed objective criteria and documentation. *See Jones v. Commissioner*, 336 F.3d at 477; *Buxton*, 246 F.3d at 773; 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also Bingaman v. Commissioner*, 186 F. App'x 642, 647 (6th Cir. 2006). The ALJ rejected Dr. Haines's statements concerning plaintiff's employability and her level of functional restriction because the Dr. Haines's conclusions were not based on any objective test results, were contrary to the observations Dr. Haines recorded in his own treatment notes, and were inconsistent with the record as a whole:

> [T]he undersigned finds the claimant retains the residual functional capacity to perform the exertional requirements of work. The claimant is markedly limited in the ability to carry out detailed instructions and interact with the general public. She is moderately limited in the ability to maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, and respond appropriately to changes in the work setting. As a result, she is limited to simple, unskilled tasks.
>
> This residual functional capacity is consistent with the medical evidence which is meager. It documents that the claimant was examined in April and May 1968 by Pine Rest Christian Hospital Outpatient Clinic. She was found to be emotionally unstable and to have low self-esteem. (Exhibits 1F and 2F). However, no specific diagnosis were given and there is no indication of specific treatment.
>
> Examination in May 2003 found complaints of being depressed and "scattered." The claimant made good eye contact and became tearful when recounting some of her painful experiences. There were slightly paranoid trends. However, the claimant was well oriented and mental status examination was essentially normal. Diagnosis of post traumatic stress disorder, dysthymic disorder, major depression, depersonalization derealization, and paranoid traits were given, apparently based on the claimant's alleged history. Ritalin and Zoloft were prescribed. It was noted that the claimant's ability to work was "severely compromised, due to an impairment in operational judgment, the ability to focus and carry through consistently on tasks" (Exhibit 4F). However, no objective findings were made and examination did not support this conclusion.
>
> Examination in December 2003 found that the claimant was bright. Mental status was entirely appropriate except for blocked flow of thought. The claimant was diagnosed with attention deficit hyperactivity disorder, and it was thought that she had only moderate symptoms of daily functioning. Individual therapy was undertaken and it was subsequently noted that the claimant was stable and doing well. There was continued improvement. Interestingly, the psychiatrist reported in March 2005 "it is noteworthy that . . . she has been

>   unable to work" (Exhibit 6F).  In accordance with 20 CFR 404.1527 and SSRs 96-2p and 96-5p, the Administrative Law Judge has considered this opinion.  While such opinions are considered in the evaluation of disability, the final responsibility for determining whether the claimant meets the statutory definition of disability, whether her impairments meet or equal the requirements of the Listing of Impairments, her residual functional capacity, and the application of vocational factors lies with the Administrative Law Judge.  This opinion is not consistent with the record as a whole and is not consistent with the psychiatrist's own records.

(A.R. 19-20).  The ALJ's opinion noted plaintiff's proffered explanation for the paucity of her records relating to treatment for mental impairments (A.R. 20), and then examined plaintiff's "full and varied" daily activities:

>   At the hearing the claimant was cheerful, clean, and appropriate, and could answer all questions.  She testified that she can adequately attend to activities of daily living.  Additionally, the evidence shows that the claimant's daily activities are full and varied.  A third party has reported that the claimant "counsels" her husband and daughter and is able to care for pets, bathe, prepare meals, do housework, go shopping, play Scrabble, read, watch television, use the telephone, and attend a meditation group (Exhibit 2E).  The claimant has reported that she also swims, listens to radio, gardens, and is too busy to pursue hobbies.  She gets along with almost everyone, helps her mother, drives, cleans the kitchen, does yard work, fixes simple things around the house, plays card games or attends sporting activities occasionally, uses the computer, pays bills, and goes out to eat occasionally (Exhibit 8E).

(A.R. 20).  The ALJ observed that plaintiff did not receive any mental health treatment "from age 18 until 2003." (A.R. 21).  There was no consistent longitudinal record of a need for treatment of mental impairments.  (*Id.*).  The ALJ's opinion directly addressed Dr. Haines's conclusion that plaintiff's ability to work had been  "severely compromised" (A.R. 141) and his notation at the end of a March 17, 2005 letter stating, "It is noteworthy that, in spite of her four-year college degree, she has been unable to work." (A.R. 150).  Plaintiff has not disputed the total absence of test results supporting Dr. Haines's opinions.  The ALJ's finding that the Dr. Haines's statements concerning plaintiff's level of functional restriction was inconsistent with his own treatment notes and the record as a whole is supported by more than substantial evidence.  Progress notes describe plaintiff as being

clear-thinking and motivated (A.R. 153), "calm" with "good focus" and "not depressed or too anxious." (A.R. 164; *see also* A.R. 158-61). They record plaintiff as working at her "book business," renting space in an antique mall, and cleaning house on a weekly basis for a cousin. (A.R. 153, 156, 161).[4] The ALJ gave proper consideration to the opinions expressed by Dr. Haines, and the ALJ satisfied the procedural requirement of providing "good reasons" for giving little weight to Dr. Haines's opinions. *See Wilson v. Commissioner*, 378 F.3d at 544; *see also Smith v. Commissioner*, No. 06-1625, __ F.3d __, 2007 WL 1040037, at * 2 (6th Cir. Apr. 9, 2007); *accord Bowen v. Commissioner*, 478 F.3d 742, 747 (6th Cir. 2007).

**2.**

Plaintiff's remaining argument is that, "The ALJ incorrectly found that Plaintiff could return to her past relevant work because the vocational expert did not find that she could do so in response to any of the hypothetical questions posed to her." (Plf. Brief at 13). The VE offered testimony in response to various hypotheticals, and identified thousands of jobs that could be performed by a hypothetical person within the region. The ALJ found that plaintiff was not disabled at Step 4 of the sequential analysis rather than Step 5. The portion of the VE's testimony that the ALJ relied at Step 4 was the VE's classification of plaintiff's past relevant work as a personal care attendant as "heavy in exertional level and unskilled." (A.R. 229). Plaintiff presented no contrary evidence.

---

[4]The ALJ apparently found it unnecessary to reference plaintiff's trip to North Carolina (A.R. 153) or her work on a patio project. (A.R. 156). Given the ALJ's Step 4 determination, it was also unnecessary for the ALJ to explore the issue of why the May 31, 2003 report Dr. Haines prepared in support of plaintiff's applications for social security benefits omitted any diagnostic component relating to plaintiff's significant history of alcohol, marijuana, and LSD abuse. (*see* A.R. 140; *see also* A.R. 136-37, 143, 145, 151, 225-26).

The ALJ's RFC determination included a finding that plaintiff was "markedly limited" in her ability to interact with the general public. (A.R. 23). The ALJ found that plaintiff's past relevant work as a personal care attendant "did not involve contact with the general public." (A.R. 22). Plaintiff testified that her work as a personal care attendant involved providing in-home care to a woman with Multiple Sclerosis. (A.R. 214). Plaintiff offered no testimony or other evidence indicating that this job involved interaction with the general public. Plaintiff's past relevant work also included work as a substitute teacher, which the VE had classified as "light and skilled." (A.R. 229). The key question is whether the ALJ's decision Step 4 decision is supported by substantial evidence after the VE gave a negative response to the following hypothetical:

> Q  Here's a new hypothetical question, a second one. To assume an individual who is 54 with a college degree and the same past work you've described. The person has no physical limitations in functioning and is able to do unskilled work. And I would also add no contact with the general public. So with all those limitations would a person be able to do any of the claimant's past work?
>
> A  No, in my opinion they could not.

(A.R. 230). The ALJ was not bound to accept hearing testimony of any witness, including the VE, in its entirety. *See Banks v. Massanari*, 258 F.3d 820, 827-28 (8th Cir. 2001); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000); *see also Hughes v. Barnhart*, 59 F. App'x 154, 159 (7th Cir. 2003). Plaintiff's own testimony established that her past relevant work as a personal care attendant, as plaintiff performed it, did not involve contact with the general public. Plaintiff provided care on an in-home basis for a woman with M.S. (A.R. 214). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones*

*v. Commissioner*, 336 F.3d at 477. I find that the ALJ's Step 4 decision passes review under this lenient standard.

Assuming *arguendo* that plaintiff was not capable of performing her past relevant work at Step 4, remand to the Commissioner for a Step 5 determination is unnecessary. The 40,300 jobs that a hypothetical person of plaintiff's age, education, work experience and RFC would be capable of performing (A.R. 230) would result in the denial of plaintiff's applications for benefits at the next stage of the sequential analysis. Remand is unnecessary because it would be a useless formality. *See Wilson v. Commissioner*, 378 F.3d at 547; *see also Griffeth v. Commissioner*, No. 06-1236, 2007 WL 444808, at *3 (6th Cir. Feb. 9, 2007); *Kornecky v. Commissioner*, 167 F. App'x 496, 507 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.").

**Recommended Disposition**

For the reasons set forth herein, I recommend that the Commissioner's decision be affirmed.

Dated: May 7, 2007                /s/ Joseph G. Scoville
                                  United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Neuman v. Rivers*, 125 F.3d 315, 322-23 (6th Cir.), *cert. denied*, 522 U.S. 1030 (1997); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).